**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| ALLURE ENERGY, INC., | § | |
| | § | |
| *Plaintiff*, | § | Civil Action No. 9:13-CV-102-RC |
| | § | |
| v. | § | |
| | § | |
| NEST LABS, INC., GREEN MOUNTAIN ENERGY COMPANY and RELIANT ENERGY RETAIL HOLDINGS, LLC, | § § § | JURY TRIAL DEMANDED |
| | § | |
| *Defendants*. | § | |
| | § | |

**PLAINTIFF ALLURE ENERGY, INC.'S OPPOSITION TO**
**DEFENDANTS' MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 4

A. The Court considers five non-exclusive factors in determining whether a movant has demonstrated "good cause." ..... 4

B. Defendants have failed to demonstrate "good cause" and leave to amend should therefore be denied. ..... 5

1. Defendants' contention that they only discovered the BAYweb system after the date for submission of their Invalidity Contentions lacks merit. ..... 5

2. Defendants have not explained how the BAYweb system is significant, particularly in light of the Petitions for Inter Partes Review that Defendants recently filed in the USPTO, in which they did not cite the BAYweb system. ..... 9

3. Allure will suffer unfair prejudice if Defendants are permitted to amend their Invalidity Contentions. ..... 11

IV. CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

**Cases**

*Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308 (Fed. Cir. 1999) .......... 10

*Am. Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005) .......... 12

*Anascape, Ltd. v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 111917 (E.D. Tex. May 1, 2008) .......... 7

*Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620 (E.D. Tex. 2007) .......... 5, 9, 11

*Cummins-Allison Corp. v. SBM Co.*, No. 9:07-cv-196, 2009 U.S. Dist. LEXIS 22114 (E.D. Tex. Mar. 19, 2009) .......... 9

*Ferguson Beauregard/Logic Controls, Inc. v. Bega Sys., LLC*, 350 F.3d 1327 (Fed. Cir. 2003) .......... 7, 15

*Finisar Corporation v. DirecTV Group*, 424 F. Supp. 2d 896 (E.D. Tex. 2006) .......... 7, 13

*Finnigan Corp. v. United States Int'l Trade Comm'n.*, 180 F.3d 1354 (Fed. Cir. 1999) .......... 7

*L.C. Eldridge Sales Co. v. Azen Mfg. Pte*, 2013 U.S. Dist. LEXIS 186309 (E.D. Tex. Oct. 11, 2013) .......... 13

*MacroSolve, Inc. v. Antenna Software, Inc.*, 2013 U.S. Dist. LEXIS 102954 (E.D. Tex. July 23, 2013) .......... 8, 13

*Mass Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284 (E.D. Tex. 2008) .......... 13

*O2 Micro Int 'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) .......... 6, 12

*Performance Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys.*, 2007 U.S. Dist. LEXIS 18201 (S.D. Tex. Mar. 15, 2007) .......... 7, 8

*PersonalWeb Techs., LLC v. Google Inc.*, 2014 U.S. Dist. LEXIS 116172 (N.D. Cal. Aug. 20, 2014) .......... 9

*S & W Enters., L.L.C. v. Southtrust Bank of Ala.*, NA, 315 F.3d 533 (5th Cir. 2003) .......... 7

*Smith & Nephew, Inc. v. Arthrex, Inc.*, 2007 U.S. Dist. Ct. Motions 639136 (E.D. Tex. Dec. 2, 2009) ........ 7

*STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845 (E.D. Tex. 2004) ........ 7

**Statutes**

35 U.S.C. § 315(e)(2) ........ 9

# I. INTRODUCTION

Defendants' Motion for Leave to Amend their Invalidity Contentions (the "Motion") comes:

- Seven months after Defendants answered the Complaint;
- after Defendants served their initial Invalidity Contentions;
- after the deadline for amending pleadings without leave of the Court;
- after Allure made its preliminary election of asserted claims;
- after the parties engaged in lengthy discussions to formulate and exchange claim construction positions and submitted their Joint Claim Construction & Prehearing Statement;
- after the deadline for discovery on claim construction; and
- after Allure submitted its opening claim construction brief.

Defendants' Motion is premised on the faulty notion: 1) that "good cause" exists because Defendants allegedly only "discovered the BAYweb system on July 29, 2014"; and 2) that Allure will not be prejudiced by the belated amendment. However, contrary to Defendants' assertion that they only discovered the BAYweb system on July 29, 2014, Defendants had prior knowledge of the BAYweb system, as it was cited as relevant to a PCT application that Nest filed approximately two years ago.[1] (*See* **Exhibit 1**). Then, on February 10, 2014, Nest cited the BAYweb system to the USTPO in an Information Disclosure Statement ("IDS") for U.S. Patent Application 13/269,501. (**Exhibit 2**). The fact that the BAYweb system was cited to Nest as relevant to its PCT application and that Nest subsequently cited it to the USPTO directly undermines any assertion that Defendants did not previously know about the system. Moreover, regardless of when Defendants learned of the BAYweb system, they assert that they learned of the BAYweb system by performing a simple internet search. (*See* Krause Decl., ¶ 5). If a simple internet search would have revealed the BAYweb system, the onus was on Defendants to perform that basic search months ago in connection with their original Invalidity Contentions,

[1] Specifically, BAYweb was cited as: "Advanced Model Owner's Manual' BAY WEB THERMOSTAT, MANUAL, [Online] 06 October 2011, Retrieved from the Internet: <URL:http://www.bayweb.com/wp-content/uploads/BW-WT4-2DOC.pdf> [retrieved on 2012-11-07]".

which were served on May 22, 2014. Instead, Defendants either waited to disclose the BAYweb system or else waited to do basic searches for potentially relevant prior art until months after their Invalidity Contentions were due, after Allure made its preliminary election of asserted claims, and after Allure committed to claim construction positions.

Defendants' belated request for leave to amend their Invalidity Contentions – which is part and parcel of Defendants' "hide the ball" approach to litigation – should be denied.

## II. STATEMENT OF FACTS

Defendants answered the operative Complaint on December 16, 2013. (*See* Dkt. 22, 24, 26). On May 22, 2014, Defendants served Plaintiffs with their Invalidity Contentions pursuant to P.R. 3-3. (*See* Defs.' Mot. at 2, ¶ 1, citing Ex. B to Krause Decl.).

The Scheduling Order (Dkt. 78) and other relevant orders set forth the following pertinent dates, all of which drive toward the *Markman* claim construction hearing scheduled for November 6, 2014:

| | |
|---|---|
| May 22, 2014 | P.R. 3-3 Invalidity Contentions (and P.R. 3-4 document production) to be served. |
| June 6, 2014 | Parties to exchange proposed terms for construction and identify any claim element governed by 35 U.S.C. § 112, ¶ 6. |
| June 12, 2014 | Deadline to amend pleading without leave of the court, except for any claim on inequitable conduct, which shall be October 9, 2014. |
| June 24, 2014 | Parties to exchange preliminary proposed claim construction and extrinsic evidence supporting same. |
| July 24, 2014 | Party asserting infringement shall serve a Preliminary Election of Asserted Claims. |
| July 25, 2014[2] | Joint Claim Construction and Prehearing Statement to be filed. |

[2] The original deadline for filing the Joint Claim Construction & Prehearing Statement was July 18, 2014, but was adjourned a week to July 25, 2014 by mutual agreement of the parties and subsequent Court order. *See* Doc. 89 (Order Granting Doc. 88 Agreed Motion to Amend Schedule Order).

| | |
|---|---|
| July 31, 2014 | Party against whom infringement is alleged shall serve a Preliminary Election of Asserted Prior Art. |
| August 20, 2014 | Completion date for discovery on claim construction. |
| August 22, 2014 | Opening claim construction brief. |

In their Preliminary Election of Asserted Prior Art served on July 31, 2014, Defendants included reference to the BAYweb system, which Defendants had not previously disclosed to Allure. (*See* Ex. G to Defs.' Mot.).[3] In the transmittal letter enclosing their Preliminary Election of Asserted Prior Art, Defendants did not include the text of their proposed amendment to their Invalidity Contentions or otherwise explain what changes they planned to make. (**Exhibit 3**).

On August 7, 2014, Defendants produced 13 documents regarding the BAYweb system. (**Exhibit 4**). On August 8, 2014, Defendants provided Allure with their Supplemental Invalidity Contentions, purportedly pursuant to P.R. 3-3. (*See* Ex. K to Defs.' Mot.). On August 8, 2014, Allure responded to Defendants' request for leave to amend their Invalidity Contentions by requesting details about the proposed amendment and the basis for the amendment, including some explanation for why Defendants believe there is "good cause." (**Exhibit 5**). Later on the same day, Defendants provided Allure with their Supplemental Invalidity Contentions and accompanying claim charts, which are hundreds of pages long. (*See* Exs. J-N to Defs. Mot.). Defendants made no effort to identify the specific changes that they made from the prior version served on May 22, 2014.

On August 13, 2014, Allure objected to Defendants' Supplemental Invalidity Contentions. (**Exhibit 6**). Allure also notified Defendants that, notwithstanding Defendants' earlier representations that the amendment to their Invalidity Contentions would be simply to

[3] This was a mere 5 days after the parties submitted the Joint Claim Construction & Prehearing Statement, and after lengthy discussions between the parties regarding claim construction positions, during which Defendants remained silent about their allegedly recent new discovery.

include the BAYweb system, a rough comparison between the May 22nd Invalidity Contentions and the "Supplemental Invalidity Contentions" revealed numerous other changes that Defendants had never mentioned. *Id*. Accordingly, Allure also asked that Defendants specify all of the changes they proposed to make in their amendment. *Id*.

On August 14, 2014, Defendants provided Allure with a redline between Defendants' May 22nd Invalidity Contentions and Supplemental Invalidity Contentions, which confirmed that Defendants had included numerous other changes that Defendants had never mentioned before in their correspondence regarding the issue. (*See* Exs. Q-T to Defs.' Mot.). On August 19, 2014, Allure's counsel advised Defendants' counsel that they would not consent to Defendants' request for leave to amend their Invalidity Contentions.

## III. ARGUMENT

Defendants must demonstrate "good cause" for leave to amend their Invalidity Contentions, and "good cause" is not satisfied merely by Defendants' assertions that they only recently learned of the subject prior art or that amendment will not prejudice Allure. (*See* Mot., p. 2).

### A. The Court considers five non-exclusive factors in determining whether a movant has demonstrated "good cause."

Patent Rule 3-6(b) states that: "[a]mendment or supplementation [of] Infringement Contentions or Invalidity Contentions, other than as expressly permitted in P. R. 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of ***good cause***." (emphasis added).

This Court considers five factors in deciding whether a movant has demonstrated "good cause."

1. The length of the delay and its potential impact on judicial proceedings;

2. The reason for the delay, including whether it was within the reasonable control of the movant;
3. Whether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent;
4. The importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations of the court's scheduling orders, local rules, and the federal rules of procedure; and
5. The danger of unfair prejudice to the non-movant.

*See Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 624-625 (E.D. Tex. 2007).

Defendants have not demonstrated and cannot demonstrate "good cause" under the foregoing legal standard.

**B. Defendants have failed to demonstrate "good cause" and leave to amend should therefore be denied.**

Defendants have proposed to make a number of amendments to their Invalidity Contentions (*see* Exs. Q-T to Defs.' Mot.) but have given no treatment or only cursory treatment to all of the proposed changes except the BAYweb system. Allure does not object to Defendants' request to delete prior art that was originally disclosed in their May 22nd Invalidity Contentions, to the extent that the deletion of prior art would even require an amendment. However, to the extent that Defendants otherwise seek to add to or amend their Invalidity Contentions, Defendants have not even explained why there is "good cause" for such amendments except for their discussion of the BAYweb system. As it relates to the BAYweb system, Defendants have not satisfied and cannot satisfy the "good cause" standard.

**1. Defendants' contention that they only discovered the BAYweb system after the date for submission of their Invalidity Contentions lacks merit.**

The first three factors that the Court considers in evaluating a defendant's motion for leave to amend its invalidity contentions – the length of the delay and its potential impact on

judicial proceedings, the reason for the delay (including whether it was within the reasonable control of the movant), and the movant's diligence – all support *denial* of Defendants' Motion.

The sole basis for Defendants' motion is the following statement: "On July 29, 2014, Nest first learned of the BAYweb system, which was the result of searches conducted online." (Krause Decl., ¶ 5). Contrary to Defendants' assertion that they only discovered the BAYweb system on July 29, 2014, Defendants clearly had prior knowledge of the BAYweb system, as that system was cited by the international searching authority in response to a PCT application that Nest filed approximately two years ago.[4] (*See* Ex. 1). The international searching authority clearly found this with a basic search. Then, on February 10, 2014, Nest cited the same BAYweb system to the USPTO in connection with an IDS. (Ex. 2). Nest was clearly aware of the BAYweb system at the time it filed its Invalidity Contentions on May 22, 2014.

Moreover, Defendants' argument that they only recently learned of the BAYweb system misses the point. Simply stating that counsel only recently located a particular prior art reference is not enough to establish "good cause." The issue is not simply *when* a movant located the prior art that it seeks to add to its invalidity contentions. The issue is whether a movant's failure to locate the subject prior art in time to be included in its invalidity contentions in the first instance was justified. This requires an analysis of whether the movant was *diligent* in searching for potentially relevant prior art. The Federal Circuit has held that "good cause" for purposes of amendments to invalidity and infringement contentions "requires a showing of diligence." *See O2 Micro Int 'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). The party seeking leave to amend has the burden to establish diligence. *Performance Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys*., 2007 U.S. Dist. LEXIS 18201, 4-5 (S.D. Tex. Mar. 15,

[4] Specifically, BAYweb was cited as: "Advanced Model Owner's Manual' BAY WEB THERMOSTAT, MANUAL, [Online] 06 October 2011, Retrieved from the Internet: <URL:http://www.bayweb.com/wp-content/uploads/BW-WT4-2DOC.pdf> [retrieved on 2012-11-07]".

2007). "Because an attempt to amend invalidity contentions asks the Court to waive the deadline for the submission of those contentions, the movant must show that it could not have included the proffered amendment at the proper time, *despite reasonable diligence*." *Smith & Nephew, Inc. v. Arthrex, Inc.*, 2007 U.S. Dist. Ct. Motions 639136 (E.D. Tex. Dec. 2, 2009) (emphasis added) (citing *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 850 (E.D. Tex. 2004) (*S & W Enters., L.L.C. v. Southtrust Bank of Ala.*, NA, 315 F.3d 533, 535 (5th Cir. 2003)).

In this case, Defendants have made no effort to demonstrate that they were diligent in preparing their Invalidity Contentions but did not, despite diligent efforts, locate the subject BAYweb system. Nor can they make this showing. Defendants concede that they located the BAYweb system through "searches conducted online." (Krause Decl., ¶ 5). What is intended to lend support for Defendants' Motion actually undermines it. That is, if all that was required to locate information about potentially invalidating prior art was to do a simple Google search, then the onus was on Defendants to do that search many months ago in connection with their original Invalidity Contentions. *See, e.g., Anascape, Ltd. v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 111917 (E.D. Tex. May 1, 2008) (Clark, J.) (as to "publicly available" information, commenting that "parties with the vast combined resources of Defendants could have located them with relatively little effort. . . . failure to fully investigate the field does not justify an amendment of invalidity contentions a few weeks before trial . . . ."). Indeed, Defendants – as the party with the burden of proof on invalidity[5] – had five months between the time they answered the operative Complaint in this case until they served their Invalidity Contentions on May 22, 2014 in which to

[5] Defendants, as the parties challenging validity, bear the burden of establishing invalidity by clear and convincing evidence. *See Finnigan Corp. v. United States Int'l Trade Comm'n.*, 180 F.3d 1354, 1365 (Fed. Cir. 1999). "Invalidity is an affirmative defense, and the party which does not properly investigate applicable prior art early enough to timely meet disclosure requirements risks exclusion of that evidence." *Finisar Corp.*, 424 F.Supp.2d at 901-902 (citing *Ferguson Beauregard/Logic Controls, Inc. v. Bega Sys., LLC*, 350 F.3d 1327, 1347 (Fed. Cir. 2003)).

locate and analyze potentially relevant prior art. Defendants' claim that it then took them an additional two months (from May 22, 2014 to July 29, 2014) to locate the BAYweb system is not credible. For instance, a simple search for "nest thermostat" on Amazon.com also reveals the Bay Controls, LLC BW-WT1-W BAYweb Internet Thermostat. (**Exhibit 7**, Declaration of Counsel, ¶ 2, citing Exhibit A). If a simple search for Nest's own product reveals the subject system, then surely Nest, with its vast ability to gather data for competitive analysis,[6] would have known about it.

Defendants disingenuously argue that "[b]ecause Defendants learned of this additional prior art reference through months of discovery after filing their Preliminary Invalidity Contentions, Defendants were unable to include those arguments in their Invalidity Contentions served May 22, 2014." (Mot., pp. 8-9). Again, Defendants' statement that they learned of the BAYweb system through "searches conducted online" directly undermines any suggestion that it was only through "months of discovery" that Defendants were able to locate the BAYweb system. (*See* Motion, p. 8-9).

Defendants' total failure to demonstrate diligence weighs strongly against granting leave to amend. *See MacroSolve, Inc. v. Antenna Software, Inc*., 2013 U.S. Dist. LEXIS 102954 (E.D. Tex. July 23, 2013) (finding that the movants were not diligent where they "lack[ed] an adequate explanation for failing to present these references at an earlier date."); *Performance Aftermarket Parts Group, Ltd. v. TI Group Auto. Sys*., 2007 U.S. Dist. LEXIS 18201 (S.D. Tex. Mar. 15, 2007) (denying leave to amend where "Plaintiffs have failed to establish that they acted diligently in terms of evaluating their potential invalidity contentions, obtaining relevant evidence, and seeking leave to amend."); *Cummins-Allison Corp. v. SBM Co*., No. 9:07-cv-196,

---

[6] Nest's access to data for competitive analysis likely increased significantly after Google acquired Nest in or around January of 2014.

2009 U.S. Dist. LEXIS 22114, at *11-12 (E.D. Tex. Mar. 19, 2009) (Clark, J.) (denying leave to amend where defendants "failed to show that they could not have timely asserted the [prior art] in their Invalidity Contentions.").[7]

**2. Defendants have not explained how the BAYweb system is significant, particularly in light of the Petitions for Inter Partes Review that Defendants recently filed in the USPTO, in which they did not cite the BAYweb system.**

In their Motion, Defendants argue that "both the prior art references and combinations that Defendants seek to add" are of "high relevance and importance to a full and fair resolution." (Mot., p. 9). As already mentioned, Defendants have not explained the basis for any amendment other than the inclusion of the BAYweb system, including any new combinations. These other proposed amendments are therefore not properly before the Court. As to the BAYweb system, Defendants' claims that the BAYweb system is significant to their invalidity defense is undermined by the fact that they intentionally omitted it from their Petitions for Inter Partes Review ("IPR") of each of the Patents-in-Suit filed on August 29, 2014. (**Exhibit 8**). Defendants did not cite the BAYweb system in connection with any of the three Petitions. *Id.* IPR imposes an estoppel requirement that precludes the petitioner from asserting invalidity during a later civil action "on any ground that the petitioner raised or reasonably could have raised during that inter partes review." 35 U.S.C. § 315(e)(2). "The purpose and effect of this rule is to encourage the petitioner to present its best and most comprehensive invalidity arguments to the PTAB." *PersonalWeb Techs., LLC v. Google Inc.*, 2014 U.S. Dist. LEXIS 116172, at *16-17 (N.D. Cal. Aug. 20, 2014). The fact that Defendants do not consider the BAYweb system to be integral to

[7] Even the case that Defendants cite, *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 624-625 (E.D. Tex. 2007) (Clark, J.), though distinguishable in some regards, supports the principle that a movant must explain its failure to discover the subject prior art reference it seeks to add.

their "best and most comprehensive invalidity arguments" weighs against granting them leave to amend their Invalidity Contentions.

Moreover, Defendants were aware of the BAYweb system, as it is cumulative of the energy management system disclosed in U.S. Patent No. 8,063,775 ("the '775 Patent"), issued to Bay Controls, LLC on November 22, 2011. Allure cited the '775 Patent in connection with the '518 Patent, which is not only publicly available information, but Allure provided the same to Defendants during the course of this litigation. (**Exhibit 9**). The '775 Patent discloses the same information as the "new" BAYweb system upon which Defendants now seek to rely. *See, e.g., Cummins-Allison Corp.*, 2009 U.S. Dist. LEXIS at *14-15. (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed. Cir. 1999)) ("Further, the assertion of the Dobbins Patent is also not extremely important. The Dobbins Patent was listed as prior art on the application for the '354 Patent. There is little reason to believe that Defendants could craft a winning invalidity defense based on prior art already considered by the PTO."). Again, Defendants do not even rely on the BAYweb system as part of their Invalidity Contentions or as prior art in the IPR.

Finally, Defendants have not even explained why the BAYweb system is materially different or better than either the '775 Patent or the prior art references Defendants previously disclosed in their Invalidity Contentions.

Defendants inaccurately assert in their Motion that Allure has elected 12 claims in the '695 Patent instead of 10. (*See* Mot., pp. 10-11). Defendants then argue that Allure's assertion of claims "required Defendants to duplicate obviousness combinations in order to reduce the number of references they assert while maintaining invalidity contentions against 12 claims." (*See* Mot., p. 11). Not only did Defendants fail to ever raise this argument before now,[8]

[8] Allure served its initial Disclosure of Asserted Claims on April 10, 2014, and its Preliminary Election of Asserted Claims on July 24, 2014. In each instance, Allure notified Defendants that Allure elected to assert Claims 1-3, 5, 9-

Defendants' argument is simply inaccurate and ignores basic patent tenets.[9] In any event, Defendants have failed to actually connect the dots between their argument concerning Allure's election of claims, and Defendants' proposed amendments to their Invalidity Contentions. (*See* Mot., p. 11).

Defendants' failure to articulate why the BAYweb system is significant and its failure to even cite the BAYweb system in its Petitions for IPR weigh against granting Defendants' Motion.

**3. Allure will suffer unfair prejudice if Defendants are permitted to amend their Invalidity Contentions.**

As this Court explained in *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620 (E.D. Tex. 2007) (Clark, J.):

> This case is another example of the tension between the necessity for orderly and complete discovery on the one hand, and the natural desire of litigants to attain important tactical advantages by delaying disclosure of key elements of their case.
>
> ***
>
> On the other hand, the accused infringer wants to pin the patent holder to a claim construction it knows will be invalidated by prior art it has not disclosed, obtain a ruling from the court approving that construction, and then sandbag the patent holder with the prior art reference.
>
> One author describes the problem as follows: The plaintiff is at one end of a "mine field," with each "mine" representing an invalidating piece of prior art. The plaintiff wants to know where each and every mine is before stepping onto the field. The defendant is at the other end of the field, and does not want to tell the plaintiff where any of the mines are, in the hope that Plaintiff will commit to a path, before it knows where not to step. James M. Amend, Patent Law: A Primer for Federal District Court Judges 19 (1998).

---

10, 12, 14, and 17-18 of the '695 Patent. Defendants did not object to the number of terms that Allure elected in either case.

[9] *See, e.g.,* 37 CFR 1.75 ("Claims in dependent form shall be construed to include all the limitations of the claim incorporated by reference into the dependent claim.").

Reflecting the "tension" described above, "[t]he purpose of the Local Rules is to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Cummins-Allison Corp*., 2009 U.S. Dist. LEXIS at *4 (citations omitted). Specifically, Patent Rule 3-3 requires an accused infringer to provide invalidity contentions within forty-five days after service of the plaintiff's asserted claims and infringement contentions. The purpose of invalidity contentions is to require a party to crystallize its theories of the case early in the litigation and provide notice of the accusing party's specific theories of invalidity. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1366 n.12 (Fed. Cir. 2006). This streamlined process was created to speed up resolution of the merits by providing structure to discovery which enables the parties to move efficiently toward claim construction and the eventual resolution of their dispute. *See Am. Video Graphics, L.P. v. Elec. Arts, Inc*., 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005). Doing so avoids the "shifting sands" approach to patent litigation whereby a party changes its invalidity position during the course of litigation. *02 Micro Int'l Ltd.*, 467 F.3d at 1364.

Rather than include the BAYweb system in their Invalidity Contentions (or perform basic internet searches to locate it), as the relevant rules required them to do, Defendants waited until after the deadline for amending pleadings without leave of the Court, after Allure made a preliminary election of asserted claims, after Allure formulated and exchanged its claim construction positions and worked with Defendants to prepare and submit the Joint Claim Construction & Prehearing Statement, and after the deadline for discovery on claim construction. In this case, Defendants waited until Allure "committed to a path" at least in terms of its election

of claims and its claim construction positions before revealing the BAYweb system, which it either did know about previously or easily could have located through basic internet searches.

This Court has recognized that there is potential for prejudice where an accused infringer seeks to amend its invalidity contentions with new prior art after the plaintiff as taken claim construction positions. *See MacroSolve, Inc. v. Antenna Software, Inc.*, 2013 U.S. Dist. LEXIS 102954 (E.D. Tex. July 23, 2013) ("At this stage in the litigation—as briefing for claim construction is about to commence—to allow Defendants to amend their invalidity contentions simply because the PTO considered such recently disclosed prior art would undermine the purpose of the Local Patent Rules.); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 287 (E.D. Tex. 2008) (noting that "the additional prior art references may give rise to new claim construction issues"); *L.C. Eldridge Sales Co. v. Azen Mfg. Pte*, 2013 U.S. Dist. LEXIS 186309 (E.D. Tex. Oct. 11, 2013) (denying motion for leave to amend invalidity contentions due in part to the fact that the request for leave came after the plaintiff served its proposed claim constructions) (citing *Finisar Corporation v. DirecTV Group*, 424 F. Supp. 2d 896, 902 (E.D. Tex. 2006)).

In their Motion, Defendants incorrectly argue that Allure will not suffer prejudice because Allure has "not participated in any discovery regarding the invalidity of the Patents-in-Suit." (Mot., p. 7, discussing Defendants' Interrogatories No. 7 and 8).[10] Allure has responded or

---

[10] Defendants' Interrogatory No. 7 requested that Allure: "State the full basis for your contention (if any) that the Defendants should not prevail on their respective affirmative defenses of anticipation of the Patents-in-Suit, including, without limitation, for each element of each of the Asserted Claims you contend is not disclosed, taught or suggested by a particular Prior Art Reference, specifically identify what you contend is not disclosed by the Prior Art References and set forth the basis for your contention.

Defendants' Interrogatory No. 8 requested Allure: State the full basis for your contention (if any) that the Defendants should not prevail on their respective affirmative defenses of obviousness of the Patents-in-Suit, including, without limitation, for each element of each of the Asserted Claims you contend is not disclosed, taught or suggested by a particular combination of the Prior Art References as set forth by the Defendants' Invalidity Contentions dated May 28, 2014. Specifically identify and explain what you contend is not disclosed by the combination of the Prior Art References and set forth the basis for your contention, where you contend motivation to

objected appropriately to all of Defendants' discovery and will respond to Defendants' Motion to Compel in due course. What Defendants have done throughout discovery is to attempt to shift their burden of proof to Allure. Defendants' Interrogatories Nos. 7 and 8, which are reproduced in note ten for reference, asked that Allure "[s]tate the full basis for [its] contention (if any) that the Defendants should not prevail on their respective affirmative defenses" of both "obviousness" and "anticipation." *Id.* Allure objected not only on the basis of over-breadth, but also because these interrogatories constitute an improper attempt to shift Defendants' burden of proof on the issue of invalidity to Allure. Defendants' motivation for doing so became clear when they filed their Petitions for IPR on August 29, 2014 – that is, Defendants were attempting to have Allure prove Defendants' invalidity case for them so they could utilize that against Allure in the IPR proceedings. In any event, Defendants cannot blame their refusal to disclose or failure to locate the BAYweb system on Allure.

As set forth above, Defendants clearly knew about the BAYweb system but deliberately held it back. This fact alone is a sufficient reason to deny Defendants' Motion. Even if the Court were to ignore Nest's earlier knowledge of the BAYweb system, Defendants' Motion fails to satisfy their initial burden to demonstrate diligence – that is, Defendants have not explained what efforts they took to locate potentially relevant prior art, much less why they did not locate or could not have located the BAYweb system if a simple internet search would have revealed the prior art. Defendants' failure to demonstrate diligence, the apparent ease with which Defendants allegedly later discovered the BAYweb system, the fact that Defendants have conceded the relative insignificance of the reference by failing to cite it to the USPTO in connection with Defendants' Petitions for IPR, and the potential prejudice to Allure by allowing Defendants to

---

combine is lacking and set forth the basis for your contention, and any secondary considerations you contend support the nonobviousness of the alleged invention claimed in the Patents-in-Suit over a particular combination.

sandbag Allure with a new prior art reference after Allure has committed to specific asserted claims and constructions all support the denial of Defendants' Motion.

## IV. CONCLUSION

For the foregoing reasons, Allure respectfully requests that the Court deny Defendants' Motion for Leave to Amend Invalidity Contentions.

Respectfully submitted,

*/s/ John S. Artz*

John S. Artz (P48578)
J. Benjamin Dolan (P47839)
John A. Artz (P24679)
Erin M. Pawlowski (P74305)
DICKINSON WRIGHT PLLC
2600 W. Big Beaver Rd., Ste. 300
Troy, Michigan 48084
(248) 433-7200
jsartz@dickinsonwright.com
bdolan@dickinsonwright.com
jartzsr@dicksinsonwright.com
epawlowski@dickinsonwright.com

Trey Yarbrough
Bar No. 22133500
Yarbrough Wilcox, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, TX 75702
(903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

*Attorneys for Plaintiff*

Dated: September 15, 2014

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 15, 2014.

/s/ *Erin M. Pawlowski*
Erin M. Pawlowski